IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDY HILL, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: RDB-07-3123 |
| VERIZON MARYLAND, INC., | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OPINION</u>

This action arises out of a complaint filed by Andy Hill ("Plaintiff" or "Hill") against

Verizon Maryland, Inc. ("Defendant" or "Verizon").[1] The complaint alleges that Defendant

wrongfully discriminated against Plaintiff on the basis of an actual or perceived disability, in

violation of the Americans with Disabilities Act ("ADA"). Pending before this Court is

Defendant's Motion for Summary Judgment.  (Paper No. 14.)  Defendant argues that it is entitled

to Summary Judgment as a matter of law because Mr. Hill does not qualify as disabled under the

ADA, and cannot otherwise establish a prima facie case of disability discrimination. This Court

has jurisdiction pursuant to 28 U.S.C. § 1331. The parties' submissions have been reviewed and

no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons that follow,

Defendant's Motion for Summary Judgment is GRANTED.

---

[1]    By stipulation of the parties, Defendant Verizon Communications, Inc. was dismissed from the
instant case, with prejudice, pursuant to Federal Rule of Civil Procedure 41. (*See* Paper No. 6.)

BACKGROUND

As the nonmoving party, the facts are viewed in the light most favorable to the Plaintiff,

Andy Hill. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff worked for Defendant Verizon for 27 years, beginning as a customer service

representative in January, 1979. (Hill Dep. p. 18, ¶ 13, attached to Pls. Opp. as Ex. 2.) In March

of 1999 Plaintiff was promoted to the position of service technician, which he held until his

voluntary retirement on March 28, 2006. (*Id.* at 29, ¶¶ 8-20.) The following is a brief summary

of the facts relevant to the Court's grant of summary judgment, including an overview of: 1)

Verizon's safety policies and job requirements; 2) Mr. Hill's employment history with Verizon;

3) Mr. Hill's physical and medical status; and 4) procedural history.

**I.      Verizon's Job Descriptions, Safety Policy, and Medically Restricted Plan**

According to an official Verizon job description, revised August 3, 2003, a service

technician's general duties include "climbing poles and ladders and working aloft." (Def.'s Mot.

Ex. B.)  Basic qualifications require that employees "meet Bell Atlantic medical standards for the

job" and "have [the] ability to . . . climb and descend [a] ladder . . . " (*Id.*) Additionally, they

"[m]ust meet [the] weight restriction to comply with OSHA/Company safety standards."[2] (*Id.*)

They "[m]ust follow established safety practices and guidelines." (*Id.*) A later job description,

revised March 20, 2005, again states that a service technician's general duties include the ability

to "handle and climb ladders and poles," and the basic qualifications require that service

---

[2]      In a signed affidavit, George Segur – a policy specialist responsible for Verizon's Safety and
Health Management department – affirmed that the company's Safety Policy on Weight Limitations of
Equipment is "based on OSHA regulations, ANSI standards, and the manufacturers' specifications for the
various pieces of equipment used by Verizon's Service Technicians…" (Def.'s Mot. Ex. D.)

technicians "climb ladders and poles, and . . . work at heights." (*Id.*) The Plaintiff was aware of

the job description and requirements. (*See* Hill Dep. p. 38-40.)

Verizon's official Safety Policy on Weight Limitations of Equipment states:

> It is and always has been the policy of the Verizon family of companies…that employees working aloft do not exceed the weight limitations of any equipment used to hold the employee along with the approved equipment used to protect or prevent the employee from falling…Verizon has, and will continue to require its employees to notify management if their weight exceeds the applicable limit.

(Def.'s Mot. Ex. C.) The policy limits the weight of employees who work aloft to 275 pounds

excluding tools and safety belt. (*Id.*) However, "[e]very attempt will be made to accommodate

employees" who fall between 275 and 325 pounds via a heavy-duty ladder.[3] (*Id.*) Employees

who exceed the 325 limit are entirely precluded from performing aerial work. (*Id.*) The policy

also states that the employee must "make every effort to reduce his or her weight to less than or

equal to 325 lbs." (*Id.*) If the employee is unable to reduce his or her weight, and their job

requires them to work aloft, "the employee will be considered . . . unable to perform one or more

essential functions of his or her job, and will be treated in accordance with local policy and

practice . . ." (*Id.*) According to the policy, both lateral and downgrade reassignments are

possible. (*Id.*) In his deposition, Plaintiff stated that he was aware of the weight requirements and

safety guidelines. (*See* Hill Dep. p. 51-53.)

Verizon employees who are unable to perform the essential functions of their job for

more than 30 days may become subject to the company's Medically Restricted Plan. (*See*

---

[3]      When Mr. Hill was first weighed in March of 2000, the policy precluded anyone weighing over 275 pounds from working aloft; the policy was later amended to allow persons weighing between 275 and 325 to work aloft with accommodations. (Hill Dep. p. 64.)

Medically Restricted Plan, attached as Ex. F to Def. Mot.) Verizon then begins considering other suitable positions, including lateral positions if available, and downgrades. (*Id.*)

## II.        Plaintiff's Employment History with Verizon

Plaintiff held the status of service technician from March of 1999 until March of 2006, working out of Verizon's Oakland, Maryland facility.  (Hill Dep. p. 17.) The position paid approximately $1098.00 per week (*See* Def.'s Mot. Ex. I.) He had a primary supervisor, Mr. White, and secondary supervisors: Mr. Lemley, Mr. Bond, and Mr. Judy. (Hill Dep. p. 34) Installing and repairing customers' telephone service and making cross connects were his primary duties. (*Id.* at 35, ¶¶ 8-10; p. 38 ¶¶ 1-3.)  In March of 2000 it was determined that Plaintiff's weight exceeded the weight limit. (*Id.* at 64.) His weight remained in excess of 325 pounds until the end of 2002, and he was unable to work aloft. (*Id.*) Verizon accommodated the Plaintiff by letting him retain the title of service technician, and continued to pay him the commensurate salary. (*Id.* at 64-65.) He was also allowed to perform limited field work such as burying cable and installing telephone jacks. (*Id.*) However, the majority of his time (approximately 80 percent) was spent performing office clerical work. (*Id.* at 66.)

In January of 2003, Plaintiff's weight was found to be below 325 pounds. (*Id.* at 67.) Pursuant to its policies, Verizon allowed Mr. Hill to use a heavy-duty ladder, and re-enter the field as a full-fledged service technician. (*Id.*) For the remainder of 2003, 95 percent of Plaintiff's time was spent working in the field. (*Id.* at 68.)

In March of 2004, Mr. White confronted Plaintiff, believing that his weight had again risen above the limit; Mr. White had Plaintiff weighed on March 5, 2004. (*Id.*) At 446 pounds, Plaintiff was removed from the field, and from March of 2004 until his retirement in March of 2006 Plaintiff's weight never fell below 400 pounds. (*Id.* at 69-70.) Approximately 85 percent of

4

Plaintiff's time was spent performing office clerical work, and 15 percent was spent performing non-aerial field tasks. (*Id.*) Still, he retained his title of Service Technician, and Verizon continued to pay him accordingly. (*Id.* at 71.) Plaintiff claims that Verizon could have further accommodated him – and on a permanent basis – by providing more non-aerial work. (*Id.* at 72; *see also* Hill Attach. to Answers to Interrogs.) According to Plaintiff, Verizon accommodated other service technicians that way (Pl.'s Opp. Ex. 13.), and Chuck Fouts, the President of the CWA Local 2109, has submitted an affidavit stating that at least three other service technicians who were accommodated by having their duties limited to buried wire compliance. (Pl.'s Opp. Ex. 14.)

Brian Bond, one of Plaintiff's supervisors, disputes Plaintiff's claim that there was plenty of non-aerial work to which he could have been assigned. Around 90 percent of the dispatched jobs require aerial work, according to Bond, and there is "no way of knowing if that job is going to require [them] to work aloft until [they] get there . . ." (Bond Dep. p. 14, attached as Ex. G to Def. Mot.) Any field jobs performed by the Plaintiff, while in violation of the company's safety policy, were "routine-type" jobs, as opposed to actual service orders that would require working aloft. (*Id.* at 15.) According to Verizon, nothing prevented Mr. Hill from serving as a service technician other than his weight – "he was unable to safely perform" his job. (Ashley Dep. p. 22, attached as Ex. E to Def. Mot.)[4]

On March 11, 2005, the Plaintiff was placed on a medically restricted plan because "he could not perform his job safely." (Bond Dep. p. 25.) In March of 2005, a store-keeper position became available in Cumberland, Maryland, and was initially offered to the Plaintiff, and he accepted. (Hill. Dep. p. 89.) It paid $928.50 per week, and according to Plaintiff he could have

---

[4]       Both the Bond and Ashley depositions were taken pursuant to Fed. R. Civ. P. 30(b)(6).

filled the job with or without reasonable accommodations. (*Id.* at 90, 94-95.) It was rescinded

shortly thereafter because, according to Verizon, the job required the use of a ladder. (*Id.* at 89;

*see also* Def. Mot. Ex. G, p. 29.) Plaintiff disputes that the job required use of a ladder. (Hill

Dep. p. 94-95.) According to the Plaintiff, shortly after the offer was rescinded, Brian Bond told

him that he "had a good EEO case because of their failure to accommodate Plaintiff's disability."

(*See* Def.'s Mot. Ex. I.)

On October 13, 2005, the Plaintiff was informed that – effective the next pay cycle – he

would be paid the rate of an office clerical assistant, resulting in an approximate $400 reduction

in weekly pay. (Hill Dep. pp. 112, 118.) It was becoming too burdensome on the company to

continue paying the Plaintiff for a job for which he was unqualified.  (Bond Dep. p. 23.) After

initiating grievance procedures with his union, Plaintiff's demotion was delayed until April 1,

2006. (Bond. Dep. p. 113.) At the end of March 2006, just before the downgrade became

effective, Plaintiff voluntarily retired. (*See* Letter to Bob Judy, attached as Ex. 18 to Pl.'s Opp.)

He claims that Verizon's reduction of his salary by approximately $19,000 per year constituted

constructive termination of his employment, rendering him unable to support himself and his

family. (Pl.'s Opp. p. 7, ¶ 43.)

## III.    Plaintiff's Medical and Physical Status

The Plaintiff is morbidly obese, as diagnosed by his physician. (Pl.'s Opp. Ex. 5.)

According to his medical records and deposition testimony, he suffers from migraine headaches,

cellulitis,[5] hypertension, sleep apnea, and limited mobility. (Pl.'s Opp. Ex. 6; *see* also Hill Dep.

p. 136.) He also estimates that he is unable to stand longer than 30 minutes. (Hill Dep. p. 136)

---

[5]      *See Stedman's Medical Dictionary,* (26th ed. 1995) (Cellulitis defined as the "inflammation of
cellular or connective tissue.")

Two years ago, at the time he retired from Verizon, he estimates that he could have walked at least a half-mile, and could have been on his feet for approximately 2 hours. (*Id.* at 138.) There is no evidence suggesting that Mr. Hill suffered from an underlying physiological condition or disorder. In his deposition, Mr. Hill testified that he is able to walk, dress, cook, do laundry, care for himself hygienically, drive, run errands, and is able to work in a variety of jobs and capacities. (*Id.* at 128.)

Plaintiff asserts that Verizon perceived him as being more physically limited, however he relies on conjecture, having never been told that he was perceived as disabled. (*Id.* at 143.) He states that he was assigned "less and less service tech work" over time,[6] and frequently missed work due to migraine headaches adding to Verizon's negative perception of him. (*Id.* at 140.) Verizon's record of Mr. Hill's impairments included its knowledge of his obesity, headaches, and high blood pressure. (*Id.* at 164; *see also* Bond Dep. at 41; Weight records attached as Pl.'s Ex. 9.)

## IV.    Procedural History

On April 15, 2005, Plaintiff filed a grievance with his union and contacted the EEOC. (Hill Dep. 102.) On October 26, 2006, Plaintiff filed a charge with the EEOC for Verizon's failure to accommodate his disability (Pl.'s Opp. Ex. 16), followed by filing a grievance with his union complaining that "Verizon did not follow the proper procedures to effectuate his downgrade." (Hill Dep. p. 164; *see also* Def. Mot. Ex. I.) On June 7, 2006, Plaintiff received a letter from the union informing him that his claims would not be pursued on account of his retirement. (Pl.'s Opp. Ex. 20.) On November 21, 2007 Plaintiff filed a complaint against

---

[6]    Plaintiff claims that when he first exceeded the 275 weight limitation he still spent 20 percent of his time performing field work, but between March, 2004 and March, 2006 he only spent 15 percent of his time performing field work. (Hill Dep. p. 142.)

Defendant in this Court. (Paper No. 1.) On September 2, 2008, Defendant filed its Motion for Summary Judgment.

## A.  Right to Sue

There is no evidence that the EEOC ever issued a right to sue letter. In *Davis v. Va. Commonwealth Univ.*, the Fourth Circuit stated:

> Before bringing a civil suit for an ADA violation, the aggrieved party must file a charge with the EEOC.  *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983).  If the EEOC does not take action within 180 days from the date of filing, the aggrieved party is entitled to notice from the EEOC.  42 U.S.C. § 2000e-5(f)(1). Upon notification, i.e. a right to sue letter, the aggrieved party has 90 days to file suit.  42 U.S.C. § 2000e-5(f)(1).

180 F.3d 626, 628 n. 3 (4th Cir. 1999). The requirement is not a hard-line prerequisite, however.

*See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) ("[T]he failure to obtain a right-to-sue letter is not a jurisdictional defect; rather the right-to-sue letter is a condition precedent. . . . Accordingly, the requirement of obtaining a right-to-sue letter may be waived by the parties or the court") (internal citations omitted). The Fourth Circuit has also stated:

> Section 2000e-5(f)(1) requires EEOC to issue a "right to sue" notice if, within 180 days after a charge is brought . . . Thus, a charging party is entitled to such notice if the appropriate conditions exist . . . In our view, it is entitlement to a "right to sue" notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under s 2000e-5(f)(1). [T]his rule . . . is simply an application of the maxim that equity regards as done that which ought to have been done.

*Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) (internal quotation marks and citations omitted). Neither party has raised procedural objections. The Court views the instant case as properly before the Court.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented

by the nonmoving party is merely colorable, or is not significantly probative, summary judgment

must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party

cannot create a genuine dispute of material fact through mere speculation or compilation of

inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>DISCUSSION</u>

The Americans with Disabilities Act ("ADA") prohibits discrimination by a covered

entity, including a private employer such as Verizon, "against a qualified individual" with a

disability. *See* 42 U.S.C. §§ 12111(2), 12112(a). To establish a cause of action for disability

discrimination, a plaintiff must show that (1) [he] has a disability, (2) [he] is otherwise qualified

for the employment in question, and (3) [he] was excluded from the employment based on the

disability. *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 348 (4th Cir.1996) (per

curiam). Plaintiff has raised two claims in his complaint, based on distinct theories of recovery.

First, he asserts that Verizon failed to provide him with reasonable accommodations; and second,

that Verizon's wrongful conduct resulted in Plaintiff's constructive discharge. (*See* Paper No. 1.)

Each of these claims will be addressed in turn.

**I.      Count I – Failure to Accommodate**

To establish a *prima facie* failure to accommodate claim under the ADA, Plaintiff must

show "(1) that he was an individual who had a disability within the meaning of the statute; (2)

that [Verizon] had notice of his disability; (3) that with reasonable accommodation he could

perform the essential functions of the position . . .; and (4) that [Verizon] refused to make such

accommodations." *Rhoads v. FDIC,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001).

A.        **Disability**

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

1.    **Obesity as a Disability**

The United States Court of Appeals for the Fourth Circuit has specifically recognized "the case law and the regulations both point unrelentingly to the conclusion that a claim based on obesity is not likely to succeed under the ADA." *Torcasio v. Murray*, 57 F.3d 1340, 1354 (4th Cir. 1995)[7] (citing *Smaw v. Commonwealth of Va. Dept. of State Police,* 862 F. Supp. 1469 (E.D.Va.1994). *Smaw* involved a plaintiff police officer whose weight exceeded the department's guidelines. 862 F. Supp. at 1471. The officer's experience was similar to Mr. Hill's in this case, in that her weight was monitored over the course of nine years, and she consistently failed to lose the necessary pounds. *Id.* Upon being terminated, she filed a complaint under the ADA. *Id.* The Court pointed to the Interpretive Guidance created by the Equal Employment Opportunity Commission on Title I of the ADA, which states that "except in rare circumstances, obesity is not considered a disabling impairment." *Id.* at 1474 (citing 29 C.F.R. § 1630 App.). While the Court opined that "the definition of physical impairment is far-reaching . . . [and] the Fourth Circuit Court of Appeals has recognized [that] the question of who is a handicapped person under the Act is best suited to a case-by-case determination," they concluded that the case law and regulations weigh heavily against a determination that obesity constitutes a disability. *Id.* at 1472 (internal citations omitted).

---

[7]        "Because the ADA and the Rehabilitation Act ("RHA") are very similar… caselaw interpreting one statute [is often used] to assist…in interpreting the other." *Francis v. City of Meriden*, 129 F.3d 281, 285, n. 4 (2d Cir. 1997).

A physical or mental impairment is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine." 29 C.F.R. § 1630.2(h)(i). Based on this definition, other courts have reached conclusions similar to the holding in *Smaw*, and have required that obesity be a symptom of an underlying physiological condition in order to constitute a disability.[8] *See Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997) (opining that "a cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is morbidly obese . . . or suffers from a weight condition that is the symptom of a physiological disorder . . . [but] no cause of action lies against an employer who simply disciplines an employee for not meeting certain weight standards."); *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 441 (6th Cir. 2007) (holding that only obesity resulting from a physiological disorder may constitute a disability under the ADA.); *Cook v. Rhode Island, Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17 (1st Cir. 1993) (holding that morbid obesity can constitute a disability, where the plaintiff had "presented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems."). In the instant case, there is no

---

[8]      Plaintiff cites a recent EEOC discussion articulating that morbid obesity "will be considered a disability if the employee can show it substantially limits a major life activity, substantially limited a major life activity in the past, or is regarded as substantially limiting." (*See* Pl.'s Ex. 21.) Aside from having no precedential authority, the Court disagrees that the opinion endorses Plaintiff's position, because it states that the obesity must "substantially limit a major life activity," and the claimant must be excluded from a job for which they are qualified. (*Id.*) As discussed *infra*, neither of those things are true for Mr. Hill.

evidence that the Plaintiff suffers from an underlying physiological condition. In fact, at the end of 2002 he lost weight, allowing him to re-enter the field as a service technician. (*See* Hill Dep. p. 67.)

### 2.   Obesity as Substantially Limiting a Major Life Activity

Even if the Court recognized Plaintiff's morbid obesity as a disability under the ADA, his obesity does not substantially limit a major life activity. The ADA states that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). The Court recognizes that Mr. Hill's obesity interferes with his quality of life; sleep apnea, high blood pressure, and an inability to walk long distances are unpleasant symptoms of a serious physical condition.

However, to be considered a disability under the ADA, an individual's impairment must be *substantially* limiting, which is a separate statutory requirement. *See Heiko v. Colombo Savings Bank,* 434 F.3d 249, 256 (4th Cir. 2006). In *Heiko*, the Fourth Circuit explained that "substantially limits" means "considerable or to a large degree." *Id.* at 256 (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams,*[9] 534 U.S. 134, 196 (2002) (citing Webster's Third New

---

[9]      Congress amended the ADA effectively rejecting *Toyota's* more restrictive interpretation of "disability" and "substantially limiting," and reinstating a broader interpretation such as that found in *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987), cited by Congress in the bill. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3553-55 (2008). First, nothing in the bill or *Arline* suggests that Congress intended to allow anyone, with an impairment of any kind, to qualify as disabled. *Toyota*, insofar as it requires a person be substantially limited, by presenting evidence of an inability to work or care for themselves in some fundamental and pervasive way, still stands on solid ground.

Second, as explained in a recent case, the ADA Amendments became effective on January 1, 2009, and are not retroactive. *See Bateman v. American Airlines, Inc.,* 2009 WL 997340 at *8, n.1 (E.D.

International Dictionary 2280 (1976)).[10] Courts may consider the nature, severity and duration of impairment when determining whether it substantially limits a major life activity. *Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 467-68 (4th Cir. 2002). In *Taylor v. Hampton Roads Regional Jail Authority,* the court opined that "combing one's hair or cutting one's food," which if a person is unable to perform, they may be considered substantially limited in a major life activity. 550 F. Supp. 2d 614, 617 (E.D. Va. 2008). In *Greenberg v. Bellsouth Telecommunications Inc.*, the court stated that "a person is substantially limited in a major life activity if he cannot care for himself; on this point, the evidence indicates that Greenberg bathed and dressed himself and could perform household chores.") (internal citations omitted). 498 F.3d 1258, 1264 (11th Cir. 2007). Mr. Hill's limitations do not rise to the requisite level of severity.

Mr. Hill testified that he is able to walk, dress, cook, do laundry, care for himself hygienically, drive, run errands, and is able to work in a variety of jobs and capacities. *Id.* at 128. He is able to perform all of the normal activities that the average person performs, even if a bit slower, or to a lesser degree. His argument, in fact, is that he was capable of performing manual labor for several hours a day at the time that he voluntarily retired from Verizon. As a matter of law, Plaintiff's impairments, though real, do not substantially limit a major life activity.

---

Va. March 9, 2009) ("Although Congress expressly overruled *Toyota* [and *Sutton*] by the ADA Amendments Act of 2008, the ADA Amendments do not apply retroactively. While *Sutton* and *Toyota...* will no longer be applicable to claims arising under the ADA and the Rehabilitation Act upon the arrival of the new year, they do govern the legal obligations of defendant in this case. Accordingly, the Court will evaluate Tish's claims in accordance with those decisions. The amendments to the ADA are not effective until January 9, 2009, and the Court must use the laws and interpretations of those laws in effect at the time of the complained-of actions. Hence, *Toyota* [and *Sutton*] remains controlling in the present case.") (internal citations omitted). *See also id.* ("Under *Toyota Motor Manufacturing, Kentucky Inc. v. Williams,* the test for disability is a stringent one.").

[10]      Substantially limits can also be defined as "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii) (2000).

### 3.   Verizon's Notice and Record of "Such an Impairment"

As stated, the ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment . . ." 42 U.S.C. § 12102(1). It is also a *prima facie* requirement that Defendant have "notice of" Plaintiff's disability. *Rhoads v. FDIC,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001). To show that Defendant had a record of Plaintiff's impairment, he must show that he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2. Verizon's only record of Mr. Hill's alleged impairment was a record of his obesity and related conditions, which this Court has already stated do not constitute a disability under the ADA. Therefore, even though Verizon had a record of Mr. Hill's weight, and possibly of certain related medical conditions, Verizon did not have a "record of" a "physical or mental impairment that substantially limits one or more of the major life activities of such individual" as required by 42 U.S.C. § 12102(1). The same goes for the "notice" requirement – while Verizon had notice of Mr. Hill's obesity, and some related conditions, it did not have notice of a disability as defined by the ADA.

### 4.   Verizon's View of Mr. Hill's Obesity

Given that Mr. Hill's obesity does not constitute a disability under the ADA, for his failure to accommodate claim to survive summary judgment, Verizon must have mistakenly regarded Mr. Hill as disabled. A plaintiff may be regarded as disabled under the ADA if either "(1) a covered entity mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Sutton v. United*

*Air Lines, Inc.,* 527 U.S. 471, 489 (1999) .[11] "The employer, in other words, must entertain a misperception: 'it must believe . . . that [an individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting.' 'Major life activities' refers 'to those activities that are of central importance to daily life,' including walking, seeing, hearing, and manual tasks that are 'central to daily life.'" *Wilson v. Phoenix Specialty Manufacturing Co.,* 513 F.3d 378, 384 (4th Cir. 2008) (citing *Toyota Mtr. Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197 (2002); *Sutton,* 527 U.S. at 489 (1999)).

It is insufficient for a plaintiff to merely show that the "employer was aware of the plaintiff's alleged impairment; rather, the plaintiff must demonstrate that, based on the perceived impairment, the employer regarded the employee *as disabled within the meaning of the ADA . . ."* *Caruso v. Camilleri*, 2008 WL 179321 *18 (W.D.N.Y. Jan. 15, 2008) (emphasis in original) (internal citations omitted). As stated above, major life activities under the ADA are those such as "caring for oneself." *See* 42 U.S.C. § 12102(2). Plaintiff argues that Verizon considered him to be disabled, as evidenced by the removal of his service technician duties, knowledge of his morbid obesity and co-morbidities, and Verizon's willingness to accommodate other employees who were unable to climb or work aloft. (Pl.'s Opp. p. 11-12.) Plaintiff also asserts that his supervisor's statement that he had a "good EEO case" establishes that his employer viewed him as disabled. (*Id.*)

---

[11] *See supra, note 8; see also* 29 C.F.R. 1630.2(I), defining "regarded as" as:

1) Has a physical or mental impairment that does not substantially limit a major life activity, but is treated…as constituting such limitation;

2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

3) Has none of the impairments defined but is treated . . . as having a substantially limiting impairment

When an employee asserts that he was regarded as disabled, the analysis "focuses on the reactions and perceptions of the [employer's] decisionmakers" who worked with the employee. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 172-73 (4th Cir.1997), *abrogated on other grounds by Bragdon v. Abbott,* 524 U.S. 624 (1998). Even if Verizon did perceive Mr. Hill negatively on account of his obesity, the ADA does not extend to all "abnormal" physical characteristics. *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2007). "To do so 'would make the central purpose of the statute, to protect the disabled, incidental to the operation of the 'regarded as' prong, which would become a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the statutes were passed.'" *Id.* (citing *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997)). There is nothing in the record suggesting that Verizon perceived his obesity as substantially limiting major life activities.[12]  The only statement directed at Mr. Hill regarding his weight – that he had a "good EEO case" – alone fails to establish that Verizon perceived Mr. Hill as substantially limited. (*See* Def.'s Mot. Ex. I.) That statement was made by Brian Bond – one of Mr. Hill's supervisors. (*Id.*) A non-moving party cannot create a genuine issue of material fact through mere speculation. *Beale v. Hardy,* 769 F.2d 213 (4th Cir.1985); *see also Wilder v. Southeastern Public Service Authority*, 869 F. Supp. 409, 416 (E.D.Va. 1994) (Manager's statement was not "direct evidence" of discrimination because it merely expressed "an

---

[12]      First, the fact that Verizon suspended his technician duties merely reflects its attempt to enforce the company's safety policies. Second, the Court has already explained why Plaintiff's obesity did not constitute a disability under the statute. Thus, Verizon's knowledge of Mr. Hill's obesity says little about how it perceived the condition and its resulting physical limitations. Third, the record is lacking any information on the employees who were accommodated with non-aerial work, how long they were accommodated, why they were accommodated, or any other information suggesting that Verizon regarded Mr. Hill as substantially limited in comparison with other employees who were unable to work aloft.

employee's opinion…" and "it [was] not an admission…which the Court could then attribute to the" employer.). One off-the-cuff remark by Brian Bond, expressing his personal opinion, is not sufficiently attributable to Verizon thereby creating a genuine issue of material fact as to whether Mr. Hill was discriminated against.

Verizon's motive for disallowing Mr. Hill to perform work as a service technician is clear. In *Smaw* – discussed above – the Court stated that "all the parties agree that Smaw was demoted because of her weight, and thus the typical questions of motive in employment discrimination cases cannot save this case from summary judgment." 862 F. Supp. at 1475. According to Verizon, nothing prevented Mr. Hill from serving as a service technician other than his weight – "he was unable to safely perform" his job. (Ashley Dep. p. 22, attached as Ex. E to Def. Mot.) Verizon's safety and weight policies were explicit, and detailed. When Mr. Hill's weight exceeded the allowable limit, he was removed from the field. (Hill Dep. p. 67.) In 2003, when his weight fell within the permissible range, he was immediately allowed to resume his technician duties. (*Id.*) It was the company's safety policies that resulted in Mr. Hill's demotion. There is no evidence that Verizon mistakenly regarded Mr. Hill as unable to perform major life activities.

For the reasons stated, Mr. Hill does not qualify as disabled within the meaning of 42 U.S.C. § 12102(1) as a matter of law.

**B.      Essential Functions and Reasonable Accommodation**

Mr. Hill is further unable to establish that he was a "qualified individual with a disability," 42 U.S.C. § 12112(a), which is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment

position that such individual holds . . ." 42 U.S.C. § 12111(8). "The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather, the ADA was designed to assure that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 200 (4th Cir. 1997). As discussed, Mr. Hill was not "truly disabled," nor was he "genuinely capable," because he could not perform the essential functions of his job.

### 1.  Essential Functions

The essential functions of a job are the "fundamental job duties" of the position. 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential because, among other reasons, the position exists to perform that function, there are a limited number of employees to whom that function can be assigned, or the function is so specialized that the employee was hired specifically to perform it. 29 C.F.R. § 1630.2(n)(2). Evidence of whether a particular function is essential includes:

> (i)     The employer's judgment as to which functions are essential;
> (ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii)   The amount of time spent on the job performing the function;
> (iv)   The consequences of not requiring the incumbent to perform the function;
> (v)    The terms of a collective bargaining agreement;
> (vi)   The work experience of past incumbents in the job; and/or
> (vii)  The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). Also, in determining which functions are essential, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or

interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Verizon's policies, of which Mr. Hill was aware, made explicitly clear that working aloft was a primary job requirement of a service technician. (*See* Hill Dep. p. 38-40.) Plaintiff's supervisor and Verizon deponent Brian Bond stated that around 90 percent of the dispatched jobs require aerial work, and there is "no way of knowing if that job is going to require [them] to work aloft until [they] get there . . ." (Bond Dep. p. 14, attached as Ex. G to Def. Mot.) As noted above, according to Verizon "he was unable to safely perform" his job. [13] (Ashley Dep. p. 22, attached as Ex. E to Def. Mot.)

"Plaintiff bears the burden of demonstrating that [he] could perform the essential functions of [his] job . . ." with or without a reasonable accommodation. *Tyndall v. National Education Centers Inc. of California,* 31 F.3d 209, 213 (4th Cir. 1994). In *Champ v. Baltimore County,* a police officer was unable to perform the essential functions of his job, including making forcible arrests. 884 F. Supp. 991 (D. Md. 1995). The officer – similar to Mr. Hill – pointed to other similarly situated employees who occupied light-duty positions. *Id.* at 997. The

---

[13]     While Mr. Hill does not argue that he should have been allowed to work aloft given his obesity, it is worth noting that safety is a valid consideration when determining whether an employee could perform the essential functions of their job. In *Johnson v. Maryland* a police officer suffered from Charcot-Marie-Tooth disease, causing him to walk with a limp, preventing him from achieving proficiency in the use of firearms. 940 F. Supp. at 877-88. The Court recognized that the inability of an officer to use firearms during an emergency posed "a direct threat to the safety of other Correctional Officers and the public at large," and constituted an essential function of the job. *Id.* For that reason, even though he was disabled, the plaintiff's claims could not survive summary judgment. *Id.*; *see also Taylor v. Hampton Roads Regional Jail Authority,* 550 F. Supp. 2d 614, 616 (E.D. Va. 2008) ("the applicant is not otherwise qualified if she poses a direct threat to…other individuals in the workplace.") (internal citations omitted). Verizon's service technician job description states that general duties include "climbing poles and ladders and working aloft." (Def.'s Mot. Ex. B.)  Service technicians "[m]ust meet [the] weight restriction to comply with OSHA/Company safety standards."[13] (*Id.*) They "[m]ust follow established safety practices and guidelines." (*Id.*) The policies recognize the inherent danger in having obese individuals work at heights, on equipment not designed to withstand their weight. Mr. Hill would have posed a danger not only to himself, but to bystanders and pedestrians as well. His inability to comply with those legitimate policies rendered him unable to perform an essential function of his job.

Court pointed out that "while the identification of a job function as essential is a factual determination, 29 C.F.R. § 1630.2(n), [plaintiff] has failed to provide any evidence that" certain tasks were "not in fact essential duties of" the position of police officer. *Id.* at 998 (internal citations omitted). Mr. Hill has pointed to a few nameless service technicians, who were apparently accommodated with non-aerial work. (Pl.'s Opp. Exs. 13 and 14.) There is no evidence, however, explaining the reason for, or duration of their accommodation. The record lacks any information that would allow a reasonable factfinder to draw useful comparisons. One could only infer that the employees were accommodated for an indefinite period of time, and a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

Without evidence that the position of service technician could be performed without aerial work, the Plaintiff has failed to establish a genuine dispute of material fact as to whether he could perform the essential functions of his job.

### 2.   Reasonable Accommodations

The reasonableness of an accommodation is assessed objectively. *See Petty v. Freightliner Corp.,* 122 F. Supp. 2d 666, 668 (W.D.N.C. 2000). The term reasonable accommodation means:

> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or

> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o)(1)(i). Plaintiff asserts that Verizon could have reasonably accommodated him by "allowing him to perform non-climbing buried wire compliance jobs or quality checks on the work of other[s]." (Pl.'s Opp. p. 14.) The Court has already explained that aerial work is an essential function of the job, however, and as a matter of law its elimination constitutes an unreasonable accommodation. *See Johnson v. Maryland*, 940 F. Supp. 873, 878 (D. Md. 1996) (opining that although an accommodation may include "job restructuring," 42 U.S.C. § 12111(9)(B), an accommodation is unreasonable if it requires elimination of an essential duty).

"Reasonable accommodations" may include "reassignment to a vacant position; acquisition or modifications of equipment or devices…" 29 C.F.R. § 1630.2(o)(2)(ii). Employers may, at their discretion, accommodate employees beyond the mandate of the ADA. *See Myers v. Hose,* 50 F.3d 278, 284 (4th Cir. 1995) ("[S]uch policies are not the definitive source of the standard by which reasonable accommodation is measured…."); *see also Vande Zande v.Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995) ("[I]f the employer . . .;/ goes further than the law requires . . . it must not be punished for its generosity by being deemed to have conceded reasonableness of so far-reaching an accommodation."). Moreover, the fact that Verizon accommodated Mr. Hill's obesity does not mean that they viewed him as disabled within the meaning of the ADA.  The Seventh Circuit, in *Cigan v. Chippewa Falls School District*, articulated clearly the problem with that line of reasoning:

> All [plaintiff] says is that, because the district made some efforts at accommodation, it *must* have regarded her that way. Thus the chain of inferences becomes circular: an employer must provide reasonable accommodations to a disabled worker, 42 U.S.C. § 12112(b)(5); provision of *any* accommodation shows that the employer regards the worker as disabled; the worker therefore *is* (statutorily) disabled; and so the worker must receive the full set of accommodations appropriate to a genuinely disabled person, not

just the tentative or incomplete steps the employer took
voluntarily.

388 F.3d 331, 335 (7th Cir. 2004). It would be against public policy to punish employers who,

out of a sense of corporate-social responsibility, choose to help an employee cope with impaired

or declining health without regard to whether the individual is disabled within the meaning of a

federal statute.

Verizon's weight policy stated that "[e]very attempt will be made to accommodate

employees" who fall between 275 and 325 pounds via a heavy-duty ladder. (Def.'s Mot. Ex. C.)

Mr. Hill took advantage of that policy in 2003. (Hill Dep. p. 67-68.)  Defendant also

accommodated Mr. Hill by paying him a salary commensurate with his technician status while

he was unable to work in the field, and performed primarily clerical work. (*Id.* at 64-65.) After

years of such accommodation, Verizon did not fire Mr. Hill but rather offered him a permanent

clerical position. (*Id.*) Had Mr. Hill actually qualified under the ADA as a disabled person,

Verizon's decision would have constituted an appropriate accommodation. *See Corrigan v.*

*Perry*, 1998 U.S. App. LEXIS 5859 *23 (4th Cir. March 24, 1998) ("If a disabled person cannot

perform a job's essential functions even with a reasonable accommodation, the Regulations

establish a policy in favor of reassignment, including reassignment to a lower grade position if

necessary."). Mr. Hill was aware of the company policies explaining that – when an employee

cannot perform the essential functions of their job – demotions are possible. (Hill Dep. p. at 51-

53.) Plaintiff attempts to create a dispute of material fact out of Verizon's refusal to offer him the

position of storekeeper, which opened in Cumberland, Maryland in March of 2005. (*Id.* at 89.) It

paid $928.50 per week, and according to Plaintiff he could have filled the job with or without

reasonable accommodations. (*Id.* at 90, 94-95.) It was rescinded shortly thereafter because,

according to Verizon, the job required the use of a ladder. (*Id.* at 89; *see also* Def. Mot. Ex. G, p. 29.) This dispute – over the storekeeper position and whether it required the use of a ladder – is insufficient to create a dispute of material fact, where Verizon accommodated Plaintiff over the course of years, in several ways, when not required by law to do so.

Even if Mr. Hill were disabled under the ADA, no genuine dispute of material fact exists as to whether Verizon failed to make reasonable accommodations.

## II.    Count II – Constructive Discharge

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge." 42 U.S.C.A. § 12112(a). Plaintiff claims that the Defendant "constructively discharged [him] by trying to demote him to the position of an Office Clerical Assistant, which paid approximately $700.50 per week, a wage decrease of approximately $19,080.00 per year." (Pl.'s Opp. p. 16.)

"To prove constructive discharge, a plaintiff must at the outset show that his employer 'deliberately made [his] working conditions intolerable in an effort to induce [him] to quit.'" *Heiko v. Colombo Savings Bank*, 434 F.3d 249, 262 (4th Cir. 2006) (citing *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001)). "Plaintiff must therefore demonstrate: (1) that the employer's actions were deliberate, and (2) that working conditions were intolerable." *Id.* Whether working conditions are intolerable is assessed objectively, from the perspective of a reasonable person. *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized or difficult or unpleasant working conditions are no so intolerable as to compel a reasonable person to resign." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (internal quotation

marks and alterations omitted). "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004) (citations omitted).

Deliberateness is hard to prove, and otherwise benign business decisions are granted much deference. In *Heiko,* a bank refused to adopt a restructuring proposal that would have created a new position for the plaintiff employee, and the Court stated that "it surely cannot be the case that deliberateness may be proven by an otherwise benign business decision." 434 F.3d at 263. Even truly awful working conditions may not rise to the level of constructive discharge. *See e.g., Williams*, 370 F.3d at 434 (working conditions held not intolerable where "supervisors yelled at employee, told her she was a poor manager, gave her poor performance evaluations, chastised her in front of customers, and once required her to work with an injured back."). Verizon's actions against Hill do not approach the requisite level of deliberateness reflecting an attempt to induce resignation. Rather, Verizon allowed an employee to retain his technician status, who continuously failed to lose the weight necessary to perform the essential functions of his job. The decrease in Hill's wages was the unfortunate result of business necessity, and further did not constitute a "career-ending action" as Plaintiff has claimed. (Pl.'s Opp. p. 16.) Plaintiff voluntarily retired before the wage decrease took effect, further undermining his argument that it left him unable to provide for his family. The evidence suggests that Mr. Hill left his employment of his "own accord." *Honor,* 383 F.3d at 187; *see also Jalloh v. Target Corp.*, 2006 U.S. Dist. LEXIS 93987 *16 (D. Md. June 15, 2006) (holding that a two month delay between learning of a demotion and resignation negates an inference of intolerable working conditions). Plaintiff was informed that he would be demoted on October 13, 2005 (Hill Dep. pp. 112, 118),

but waited until the end of March, 2006 to resign. (*See* Letter to Bob Judy, attached as Ex. 18 to

Pl.'s Opp.)

The Court does not doubt that Verizon's actions were hard on Mr. Hill. They did not,

however, constitute constructive discharge of his employment. The claim of "constructive

discharge" is not meant to be an end-run around the ADA's main goal – to protect those truly

disabled individuals who, because of stereotypes and prejudices concerning their general

capabilities, are denied employment opportunities. *Halperin v. Abacus Tech. Corp.*, 128 F.3d

191, 200 (4th Cir. 1997) ("The ADA simply was not designed to protect the public from all

adverse effects of ill-health and misfortune. Rather, the ADA was designed to assure that truly

disabled, but genuinely capable, individuals will not face discrimination in employment because

of stereotypes about the insurmountability of their handicaps."). On the record before the Court,

there is no genuine dispute of material fact as to whether Verizon deliberately and constructively

discharged Mr. Hill.

CONCLUSION

Accordingly, for the reasons stated, Defendant's Motion for Summary Judgment (Paper

No. 14) is GRANTED. A separate Order follows.


Dated: July 13, 2009                                    _____/s/_____

                                                        Richard D. Bennett
                                                        United States District Judge